Adam E. Gersh, Esquire
Flaster Greenberg PC
Commerce Center
1810 Chapel Ave. West
Cherry Hill, NJ 08002
Email: adam.gersh@flastergreenberg.com
Phone: (856) 382-2246

Dennis E. Boyle, Esquire (*Pro Hac Vice* Application Pending)
Blerina Jasari, Esquire (*Pro Hac Vice* Application Pending)
1050 Connecticut Ave, Suite 500
Washington, D.C., 20036
Email: dboyle@dennisboylelegal.com
         bjasari@dennisboylelegal.com
Phone: (202) 430-1900

*Attorneys for Plaintiff Deep Water Recoveries (S) Pte Ltd.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION
IN ADMIRALTY**

| | |
|---|---|
| DEEP WATER RECOVERIES (S) PTE LTD,<br><br>                            Plaintiff,<br><br>           v.<br><br>LOST AND ABANDONED SILVER BULLION located within 160 nautical miles southeast of the port of Salalah in Oman, *in rem*,<br><br>                            Defendant. | C.A. No. ** |

**<u>VERIFIED COMPLAINT IN ADMIRALTY *IN REM* AND *IN PERSONAM*</u>**

**COMES NOW**, the Plaintiff Deep Water Recoveries (S) Pte Ltd. ("DWR"), a

Singaporean based company, hereby brings suit *in rem* against the Defendant, Lost and

Abandoned Silver Bullion associated with the Wrecked and Abandoned Vessel known as the *S.S.*

*JOHN BARRY*, which was sunk in 1944, located within 160 nautical miles southeast of the port of Salalah in Oman, *in rem* (the "J.B."), alleging further that:

## Jurisdiction and Venue

1. This is a case of admiralty and maritime jurisdiction stating a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure as hereinafter more fully appears. This Court has jurisdiction of this pursuant to 28 U.S.C. § 1333.

2. This action is an action *in rem* and *quasi in rem* in that an artifact from the J.B. debris field will be filed with the Court establishing *quasi in rem* jurisdiction. Anything recovered by DWR will be lodged with the Court establishing *in rem* jurisdiction.

3. Venue in this action is appropriate pursuant to 28 U.S.C. § 1390(b) and 28 U.S.C. § 1333.

## Factual Averments

4. The Plaintiff is Deep Water Recoveries (S) Pte Ltd., a corporation located at 108 Jalan Hang Jebat #01-21, Singapore 139529, founded and owned by Dorian F. Ball and Deirdre Ball. Dorian F. Ball is a U.K. citizen and Deirdre Ball is a U.S. citizen.

5. DWR's mission is to search for, document and potentially salvage shipwrecks.

6. DWR has the ability to raise investor capital and charter the necessary vessels, retain equipment and tools, and engage skilled staff to carry out the mission of salvaging the silver bullion on the wreck of the J.B. effectively and efficiently.

7. The J.B., one of 2,710 standard Liberty class merchant ships built between 1941 and 1945, sank after it was torpedoed by the German submarine U-859 in the Arabian Sea, on August 28, 1944. It lies approximately 160 nautical miles southeast of the port of Salalah in Oman.

8. The cargo of the J.B., at the time of its sinking, primarily consisted of commercial cargo, such as refinery construction materials and railway lines, and some war materials destined for allied forces in the Persian Gulf.

9. At the time of the sinking, the J.B. was rumored to be carrying a consignment of silver bullion, which is the subject of this salvage claim, as explained in greater detail below. However, the U.S. government has steadfastly denied the existence of any silver bullion on the vessel and has not asserted any claim or ownership interest over the silver bullion.

**Prior Salvage of the J.B.**

10. At the time of its sinking, the J.B. was known to be carrying a cargo of three million American-minted Saudi silver Riyal Coins, probably as an American payment associated with the Saudi Arabian public petroleum and natural gas company, the California-Arabian Standard Oil Company which became the Arabian American Oil Company ("Aramco") in January 1944.  The shipment of these coins is believed to be intended for payment to Aramco workers who were building new oil refineries and other United States facilities.

11. Due to the position of the wreck of the J.B., the wreck was out of reach for all undersea recovery methods in 1944 when it sank.

12. Captain Brian Shoemaker, United States Navy (Retired), and American businessmen Hugh O'Neill, H. McGuire Riley, and Jay Fiondella, successfully bid for the salvage rights from the U.S. Government when those rights were placed for auction in 1989.  In order to raise the money to retrieve the J.B. they formed a partnership called "The John Barry Group".

13. The John Barry Group paid $50,010 for rights to the wreck of the J.B. and the ship's cargo and agreed to pay 10 percent of the value of anything that is salvaged to the U.S. Department of Transportation Maritime Administration.

14. Upon information and belief, in 1990 the John Barry Group entered into an agreement with Sheikh Ahmed Farid al-Aulaki, chairman of the Desert Line Co. in the Omani capital, Muscat, for the sale of salvage rights to the J.B. This combined group then enlisted the help of the French International Maritime Institute and Jean Roux in an effort to recover the Saudi riyal coins. Mr. Roux and his team developed the technology and the technique to permit an operation of deep-sea recovery for the wreck of the J.B.

15. The salvaging operation was funded by the Ocean Group, a consortium of Omani businessmen founded by Sheikh al-Aulaki.

16. In November 1994, the Ocean Group partially recovered the silver coins from the wreck of the J.B. with the use of a modified drilling ship carrying a 50-ton video-equipped grab.

17. The Ocean Group has since renewed its salvage rights six times, which finally expired in 2006. Thus, the Ocean Group has abandoned any interest in the silver bullion.

18. Since that time, upon information and belief, Sheikh al-Aulaki has not been involved in any salvage operations at the J.B. shipwreck site. In 2017, Sheikh al-Aulaki died and his heirs have declined any interest in the J.B.

19. Plaintiff, DWR, does not seek salvage rights over the J.B., the remaining Saudi Riyal Coins associated with the wreck or any of the other cargo or appurtenances associated with the wreck. Rather, DWR only seeks salvage rights over the abandoned silver bullion believed to be at, or close to, the wreck site.

4

**Silver Bullion believed to have been carried by the J.B.**

20. The records associated with the J.B. demonstrate an unusual routing of the Liberty Ship. After separating from a convoy in the Caribbean Sea, the J.B. traveled first to New York and then to Philadelphia, the ship joined a convoy to cross the Atlantic Ocean and the Mediterranean Sea. In the Mediterranean Sea, it separated from its convoy and proceeded through the Suez Canal *en route* to ports in the Persian Gulf.

21. Rumors of a mysterious cargo, composed of several tons of silver bullion, began to circulate soon after the J.B. sinking. These rumors were based routine sinking reports filed by the survivors.

22. Adding to the mystery is the fact that important shipping documents associated with the J.B. have been lost.

23. Since 1944, the U.S. government has steadfastly denied the existence of any silver bullion associated with the J.B.

24. The prior expedition to salvage the J.B. led by Sheikh al-Aulaki, although successful in recovering silver Riyal Coins, did not locate any silver bullion. Since the conclusion of that expedition, expedition members have reported in the media that the silver bullion does not exist.

25. Since Sheikh al-Aulaki's and the Ocean Group's abandonment of the wreck of the J.B., DWR has engaged in a substantial amount of research, which would constitute a "trade secret", which has led it to conclude that the silver bullion, whose existence has been denied by the U.S. government, does in fact exist.

26. In 2005, DWR chartered a vessel, equipment and staff and visited the wreck of the J.B. where it inspected the wreck and its debris field. During this visit, DWR obtained information regarding the state of the wreck.

27. No other vessel or enterprise has visited the J.B. or its debris field since 2005. DWR is the last person to visit the J.B.

28. DWR has the ability to raise investor capital and charter the necessary vessels, retain equipment and tools, and engage skilled staff to carry out the mission of salvaging these unique and valuable artifacts on the wreck of the J.B. effectively and efficiently.

29. In fact, Mr. Ball, the co-founder of DWR, has achieved significant fame as a salvor in the area of deep-water recovery.

30. The silver bullion, as well as any other artifacts recovered pursuant to the salvage operations conducted under the jurisdiction of this Court, will be in the actual and/or constructive possession of this Court or its duly-appointed Substitute Custodian during the pendency of this action.

31. This Court has, or will have during the pendency of this action, jurisdiction *in personam* over any potential claimant or competing salvor by virtue of their contacts with this forum, the nature of DWR's action, the relationship of the potential claimant and/or salvor to DWR, the forum and the cause of action and/or the principles of jurisdiction by necessity.

32. This Court's exercise of jurisdiction over competing claimants and/or salvors is necessary to prevent irreparable injury to, theft or destruction of the silver bullion; to allow DWR to continue to pursue its ongoing salvage operation without interference; to bring the recovered artifacts within this District; and to prevent destruction of this Court's actual and potential jurisdiction.

33. DWR and its associates have invested substantial time, money, and effort in researching the history of the J.B., in searching for the silver bullion, and in locating and initiating the physical recovery of these artifacts.

34. DWR and its associates are actively, voluntarily and successfully engaged in the process of reducing the silver bullion to DWR's exclusive custody, control, possession and dominion as well as the natural salvaging circumstance permit, and the Plaintiff has the present ability and intention to continue to do so during the pendency of this action.

## COUNT I

### Possessory and Ownership Claim Pursuant to the Law of Finds

35. DWR incorporates by reference its allegations in Paragraphs 1 through 34 as if same were fully set forth herein.

36. DWR is the rightful salvor in possession of the silver bullion and has taken such actions as are necessary to constitute dominion and control of the abandoned shipwreck.

37. As there is no extant owner of the Defendant silver bullion, pursuant to the maritime law of finds, DWR is entitled to the exclusive title, ownership and possession of the silver bullion that it and its associates shall salvage pursuant to this action and under the protection of this Court.

## COUNT II

### Salvage Award Claim

38. DWR incorporates by reference its allegations in Paragraphs 1 through 34 as if same were fully set forth herein.

39. The Defendant silver bullion is subject to marine peril and is in an utterly helpless condition from which they could not be rescued without the voluntary and successful services of DWR and its associates.

40. DWR is under no legal obligation or official duty to render salvage services to the J.B. or any cargo associated with the J.B.

41. DWR's services have been and will continue to be successful in rescuing and/or helping to rescue the silver bullion in order to return the silver bullion to the stream of commerce from which they were lost.

42. DWR, by virtue of such services so performed, the private risk capital expended and the time spent and danger incurred in finding and salvaging the silver bullion, is entitled to a liberal, meet and competent salvage award for such services.

## COUNT III

### Salvage Operations and Injunctive Claim

43. DWR incorporates by reference its allegations in Paragraphs 1 through 39 as if same were fully set forth herein.

44. The rights and efforts of DWR, the economic value and integrity of the artifacts sought, the successful recovery of lost and abandoned property at sea, and the safety of life and limb mandate that DWR be protected by the Court in maintaining exclusive dominion and control of his salvage activities with respect to the lost and abandoned silver bullion without the interference by third parties.

45. Allowing interference with DWR's ongoing operations would substantially and irreparably injure DWR, would be inequitable, would be harmful to the public good, would

constitute a significant hazard to safe and successful salvage operations, and would be contrary to a balancing of the repetitive interests of the parties and the comparative hardships borne.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

(1) Declare Deep Water Recoveries the true, sole and exclusive owner of any silver bullion salvaged from the J.B. by it, its agents and associates; and

(2) In the alternative, award Deep Water Recoveries a liberal salvage award in specie, with the amount and/or composition of such award as may be determined by this Court pursuant to the law of salvage; and

(3) Declare Deep Water Recoveries as entitled to the sole and exclusive right to continue its ongoing recovery operations and to salvage, preserve and transact with any artifacts recovered without interference by any third parties, and that any and all such interference be temporarily and permanently enjoined; and

(4) That process *in rem* and/or quasi *in rem* and a Warrant of Arrest may issue in due form of law, in accordance with the practice of this Honorable Court in causes of admiralty and maritime jurisdiction against the aforesaid shipwreck and/or salvage from the Defendant vessel with notice to all persons claiming an interest in the Plaintiff's ongoing salvage operations to appear and answer this Complaint to show cause as to why the silver bullion salvaged by the Plaintiff and its associates should not be:

   a. Delivered to Deep Water Recoveries as having full ownership, title and right to possession thereof, or

   b. Alternatively, sold or appropriately disposed of in satisfaction of any judgment in favor of Deep Water Recoveries for a salvage award; and

      c.  That Deep Water Recoveries may have such other and further relief as the justice of this cause may require.

Dated: May 28, 2021                      Respectfully submitted,

/s/ Adam E. Gersh

Adam E. Gersh, Esquire
Flaster Greenberg PC
Commerce Center
1810 Chapel Ave. West
Cherry Hill, NJ 08002
Email: adam.gersh@flastergreenberg.com
Phone: (856) 382-2246


Dennis E, Boyle, Esquire (*Pro Hac Vice* Application Pending)
Blerina Jasari, Esquire (*Pro Hac Vice* Application Pending)
1050 Connecticut Ave, Suite 500
Washington, D.C., 20036
Email: dboyle@dennisboylelegal.com
          bjasari@dennisboylelegal.com
Phone: (202) 430-1900

*Counsel for Plaintiff*

10

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Executed on May 28, 2021

　　　　　　　　　　　　　　　　　　　　　　　Adam E. Gersh, Esquire