[ECF No. 42]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **DEEP WATER RECOVERIES (S) PTE LTD.,**<br><br>   **Plaintiff,**<br><br> v.<br><br>**LOST AND ABANDONED SILVER BULLION, located within 160 nautical miles southeast of the port of Salalah in Oman,** *in rem*<br><br>   **Defendant.** | Civil No. 21-11949 (JHR/EAP) |

## OPINION

This matter comes before the Court on the Motion of the United States of America to Intervene. *See* ECF No. 42. Plaintiff Deep Water Recoveries (S) PTE Ltd. ("Plaintiff" or "DWR") has opposed the motion, *see* ECF No. 43, and the United States has filed a reply, *see* ECF No. 44. The Court has reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the following reasons, the Court will grant the Motion to Intervene as of right under Federal Rule of Civil Procedure 24(a)(2)

## FACTUAL BACKGROUND

### A. General Background

Plaintiff DWR is a Singaporean-based companied founded and owned by Dorian F. Ball, a U.K. citizen, and Deirdre Ball, a U.S. citizen. ECF No. 1, Complaint, ¶ 4. Plaintiff's mission is to

search for, document, and potentially salvage shipwrecks. *Id.* ¶ 5. The following facts are taken from Plaintiff's Complaint.

The S.S. JOHN BARRY ("J.B.") was one of 2,710 American standard Liberty class merchant ships built between 1941 and 1945. *Id.* ¶ 7. The J.B. sank on August 28, 1944, after it was torpedoed by the German submarine U-859 in the Arabian Sea. *Id.* Currently, it lies approximately 160 nautical miles southeast of the port of Salalah in Oman. *Id.* At the time it sank, the J.B.'s cargo "primarily consisted of commercial cargo, such as refinery construction materials and railway lines, and some war materials destined for allied forces in the Persian Gulf. *Id.* ¶ 8. It was also rumored to be carrying a vast shipment of silver bullion, which is the subject of the current salvage claim. *Id.* ¶ 9. According to Plaintiff, the United States Government has steadfastly denied the existence of any silver bullion on the vessel and has not asserted any claim or ownership over the silver bullion. *Id.*

**B.** **<u>Prior Salvage of the J.B.</u>**

At the time of its sinking, Plaintiff alleges that the J.B. was purportedly carrying a cargo of three million American-minted Saudi silver Riyal Coins. *Id.* ¶ 10. Plaintiff believes the shipment of this coins was intended to workers of the Arabian American Oil Company ("Aramco"), who were building new oil refineries and other American facilities. *Id.*

Due to the position of the J.B. when it sank in 1944, the wreck remained out of reach for all then-available undersea recovery methods. *Id.* ¶ 11. In 1989, Captain Brian Shoemaker, a retired United States Navy officer and American businessmen Hugh O'Neill, H. McGuire Riley and Jay Fiondella, successfully bid for the salvage rights to the J.B. from the United States Government. *Id.* ¶ 12. Plaintiff alleges that to raise the money to retrieve the J.B. the men formed a partnership called "The John Barry Group." *Id.* According to the Complaint, the John Barry Group paid $50,010 for

2

the salvage rights to the J.B. and its cargo and agreed to pay ten percent of the value of anything salvaged to the United States Department of Transportation Maritime Administration. *Id.* ¶ 13.

Plaintiff further alleges that in 1990, the John Barry Group entered into an agreement with Sheikh Ahmed Farid al-Aulaki, chairman of the Desert Line Co. in Muscat, Oman for the sale of salvage rights to the J.B. *Id.* ¶ 14. Plaintiff states that this "combined group then enlisted the help of the French International Maritime Institute and Jean Roux in an effort to recover the Saudi [R]iyal coins." *Id.* Thereafter, Mr. Roux and his team allegedly developed the technology and technique to permit the deep-sea recovery. *Id.* Sheihk al-Aulaki formed a consortium of Omani businessmen, called the Ocean Group, to fund the salvage operation. *Id.* ¶ 15.

The Complaint states that, "[i]n November 1994, the Ocean Group partially recovered the silver coins from the wreck of the J.B. with the use of a modified drilling ship carrying a fifty-ton video-equipped grab. *Id.* ¶ 16. Since then, Plaintiff alleges that "[t]he Ocean Group has renewed its salvage rights six times, and those rights finally expired in 2006." *Id.* ¶ 17. "In 2017, Sheikh al-Aulaki died, and his heirs have declined any interest in the J.B." *Id.* ¶ 18.

C.  **The Silver Bullion on the J.B.**

The records associated with the J.B. demonstrate that, after separating from a convoy in the Caribbean Sea, it traveled first to New York and then to Philadelphia. *Id.* ¶ 20. The J.B. then joined the convoy to cross the Atlantic Ocean and the Mediterranean Sea, where it then separated from its convoy and proceeded through the Suez Canal to ports in the Persian Gulf. *Id.*

Soon after the J.B. sank, Plaintiff alleges that rumors of several tons of silver bullion aboard the ship began circulating, which were compounded by "the fact that important shipping documents associated with the J.B. ha[d] been lost." *Id.* ¶¶ 21-22. According to the complaint, since 1944, the United States government has denied the existence of any silver bullion associated with the J.B. *Id.* ¶ 23.

Although successful in recovering silver Riyal coins, the prior expedition did not locate any silver bullion. *Id.* ¶ 24. Since Sheikh al-Aulaki's and the Ocean Group's abandonment of the J.B.'s wreck, Plaintiff alleges that it has engaged in substantial amount of research, which has led it to conclude that the silver bullion does in fact exist. *Id.* ¶ 25.

In 2005, Plaintiff chartered a vessel, equipment, and staff and visited the wreck of the J.B. *Id.* ¶ 26. Plaintiff alleges that "[n]o other vessel or enterprise has visited the J.B. or its debris field since 2005." *Id.* ¶ 27. Plaintiff claims that it can "raise investor capital and charter the necessary vessels, retain equipment and tools, and engage skilled staff to carry out the mission of salvaging . . . artifacts on the wreck of the J.B. effectively and efficiently." *Id.* ¶ 28. Plaintiff contends that it "does not seek salvage rights over the J.B., the remaining Saudi Riyal [c]oins associated with the wreck, or any of the other cargo or appurtenances associated with the wreck." *Id.* ¶ 19. Rather, DWR is only pursuing salvage rights over the abandoned silver bullion believed to be at, or close to, the wreck site. *Id.*

Plaintiff alleges that the silver bullion, and any other artifacts recovered pursuant to the salvage operations conducted under this Court's jurisdiction, will be in the actual and/or constructive possession of this Court or its duly-appointed Substitute Custodian during the pendency of this action. *Id.* ¶ 30. Moreover, Plaintiff asserts that this Court will have *in personam* jurisdiction over "any potential claimant or competing salvor," which is "necessary to prevent irreparable injury to, theft, or destruction of the silver bullion," which will allow Plaintiff "to pursue its ongoing salvage operation without interference." *Id.* ¶ 31.

D.   **Procedural History**

Plaintiff filed this action on May 28, 2021, setting forth three causes of action: (1) a possessory and ownership claim pursuant to the Law of Finds (Count I), *id.* ¶¶ 35-37; (2) a salvage

4

award claim (Count II), *id.* ¶ 38-42; and (3) a claim for injunctive relief so that its ongoing salvage operations will be protected from interference by third parties (Count III), *id.* ¶¶ 43–45.

On April 22, 2024, the United States filed the present Motion to Intervene or in the alternative, to file a verified statement of right or interest in the wreck of the J.B. and any cargo that is purported to be on the vessel (U.S. Mot.). *See* ECF No. 42. Plaintiff filed an opposition, *see* ECF No. 43 ("Pl.'s Opp."), and the United States filed a reply ("U.S. Reply") *see* ECF No. 44.

## **ANALYSIS**

Federal Rule of Civil Procedure 24 provides, in pertinent part:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
>
> . . . .
>
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> . . . .
>
> **(b) Permissive Intervention**
>
> **(1) In General.** On timely, motion, the court may permit anyone to intervene who:
>
> . . . .
>
> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24.

The United States seeks to intervene in the present case (1) as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or alternatively, (2) on a permissive basis under Federal Rule of Civil Procedure 24(b)(1)(B). U.S. Mot. at 1. Specifically, the United States asserts that it has a claim to the J.B. and any cargo that might be on board, and that its intervention shares a common question of law or fact with the underlying action. *Id.* at 6. Plaintiff responds that the United States

has no interest in the property that is the subject of this litigation, and that permissive intervention is not appropriate because the United States has no evidence of ownership of the silver bullion. Pl.'s Opp. at 3, 9. As the Court finds that the United States has established entitlement to intervention of right, the Court need not address the United States' alternative argument for permissive intervention.

The United States Court of Appeals for the Third Circuit has interpreted Federal Rule of Civil Procedure 24(a)(2) as requiring proof of four elements from an applicant seeking intervention as of right: (1) "a timely application for leave to intervene"; (2) "a sufficient interest in the litigation"; (3) "a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action"; and (4) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).

### A. Timeliness

Intervention as of right under Rule 24(a)(2) requires that intervention be sought by way of a "timely motion." Fed. R. Civ. P. 24(a)(2). "The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" *Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*, 297 F. App'x 138, 140 (3d Cir. 2008) (quoting *In re Fine Paper*, 695 F.2d 494, 500 (3d Cir. 1982)). "The mere passage of time . . . does not render an application untimely." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). *Id.* Rather, to determine whether an intervention motion is timely, a court must consider three factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012) (quoting *Mountain Top*, 72 F.3d at 369)). "These three factors are necessarily bound up in one another." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016).

6

Under the first factor, the critical inquiry is "what proceedings of substance on the merits have occurred?" *Mountain Top Condo.*, 72 F.3d at 369. "To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994). The second factor considers that "prejudice can result when a party seeks to intervene at a late point in litigation." *United States v. Territory of V.I.*, 748 F.3d 514, 524 (3d Cir. 2014). Finally, under the third factor, the court must consider the reason for the proposed intervenor's motion. *Wallach*, 837 F.3d at 375.

Here, Plaintiff does not contest the timeliness of the United States' motion to intervene, and, in any event, the Court finds that the United States acted expeditiously in pursuing relief. The United States filed its motion within the deadline set forth by the Court. *See* ECF No. 40 (Order directing that United States file its motion to intervene by April 22, 2024). No discovery has begun, and the parties have not yet addressed the substance of Plaintiff's claims. Indeed, the sole substantive ruling in this matter is the Court's entry of default judgment, which was subsequently vacated upon a finding that Plaintiff had failed to provide the United States with proper notice of the proceedings. Given the early stage of this litigation, the Court finds that the United States' motion is timely.

**B.   Sufficient Interest in the Litigation**

Although there is no "precise and authoritative definition of the interest required to sustain a right to intervene under Rule 24," several "general guidelines have emerged." *Mountain Top Condo.*, 72 F.3d at 366. A mere economic interest in the outcome of the litigation does not suffice to support a motion to intervene. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citations omitted). Rather a prospective intervenor must demonstrate "an interest relating to the property or transaction which is the subject of the action." *Id.* (quoting Fed. R. Civ. P. 24(a)(2)). The intervenor's interest must be "'direct,' as opposed to contingent or remote."

7

*Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (citations omitted). "An interest that is collateral to the action or contingent on the future occurrence of a sequence of events is insufficient." *State Farm Fire & Cas. Co. v. Spector*, No. 15- 6752, 2016 WL 8668295, at *4 (E.D. Pa. Nov. 4, 2016) (quoting 6 Moore's Federal Practice § 24.03(1)(a) (3d ed. 2015)). Moreover, "the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Mountain Top Condo.*, 72 F.3d at 366.

An intervenor's interest in a specific fund or property, however, sufficiently warrants intervention in a case affecting that property. *Id.* at 366 (citing cases). Indeed, "interests in property are the most elementary type of right that Rule 24(a) is designed to protect" and "many of the cases in which a sufficient interest has been found under . . . Rule 24(a)(2) have been cases in which there is a readily identifiable interest in land, or some other form of property." 7C Wright & Miller, *Federal Practice & Procedure* § 1908.1 (3d ed.) (footnotes omitted).

The United States contends that it has a sufficient interest in this action because it owns the J.B. and "most likely" any cargo that might be onboard the vessel. U.S. Mot. at 4; *see* ECF No. 2, (Verified Statement of Right or Interest ("Verified Statement")). As the "rightful owner of the vessel and any property onboard," and because it "has not explicitly abandoned the property," the United States contends that its ownership interest remains at stake because Plaintiff seeks to be declared the sole owner over the purported silver bullion. U.S. Mot. at 5; *see* ECF No. 28-2, Declaration of Nathaniel Williford ("Williford Decl.") ¶¶ 4-5. Given its alleged "specific, defined ownership interest in both the [J.B.] and its cargo," which is impacted by the claims in the underlying action, the United States asserts that its ownership interest is sufficient for purposes of intervention as of right. U.S. Mot. 5-6.

Plaintiff responds that the United States has no interest in the underlying litigation because it has never owned the silver bullion. Pl.'s Opp. at 3. According to Plaintiff, the United States

8

argues only that it owns the J.B. and "most likely" any cargo onboard but it has offered no evidence that it has any specific interest in the silver bullion. *Id.* at 4.  Moreover, Plaintiff contends that in its 1978 Invitation to Bid, the United States previously stated that it did not own all of the cargo on the J.B.—only silver coins and machinery parts. *Id.* at 5 & Ex. A (Invitation for Bids No. PD-X-1027). Plaintiff cites to numerous government documents in which the United States indicated its inability to verify the presence of silver bullion onboard the J.B. or to locate any document or records concerning such silver bullion. *Id.* at 5-6 & Ex. C (Letter from Department of the Navy) & Ex. D (Dept. of Transp., Maritime Admin. ("MARAD") Solicitation).  Finally, Plaintiff points to an April 27, 2012 memorandum from Kevin M. Tokarski, Associate Administrator for National Security at MARAD, stating that "MARAD's title to JOHN BARRY and its cargo is not clear." *Id.* at 6 & Ex. E (Mem.) at 4.

"[T]raditionally, courts have applied the law of salvage when the original owner of a ship or cargo lost at sea retains an ownership interest in the property—albeit also granting a 'very liberal' award to the salvor for its recovery of the *res*." *Ne. Rsch, LLC v. One Shipwrecked Vessel*, 729 F.3d 197, 208 (2d Cir. 2013) (citations omitted).  "Conversely, the law of finds vests title to property that is abandoned, or which has never been owned, in the finder." *Id.* (citations omitted).  "Admiralty law presumes that owners do not give up title to ships and cargo in marine peril, even if cargo is swept overboard or a crew has to leave its vessel on the open water." *Int'l Aircraft Recovery, LLC v. Unidentified, Wrecked & Abandoned Aircraft*, 218 F.3d 1255, 1258 (11th Cir. 2000).  Although "[t]he law recognizes . . . that owners can 'abandon' all interests in their vessels," the federal government "cannot abandon property absent an affirmative act authorized by Congress." *Id.* (citing *Royal Indem. Co. v. United States*, 313 U.S. 289, 294 (1941)).  "In the realm of admiralty law, courts have held that the United States has not abandoned its interests in ships sunk over a century ago

9

during the Civil War." *Id.* at 1258-59 (citing *United States v. Steinmetz*, 973 F.2d 212, 222-23 (3d Cir. 1992); *Hatteras, Inc. v. The U.S.S. Hatteras*, 1984 A.M.C. 1094, 1097-1101 (S.D. Tex. 1981)).

With respect to salvage rights to government-owned ships, 46 U.S.C. § 57110 provides that only the Secretary of Transportation is "authorized to enter into marine salvage agreements for the recoveries, sale, and disposal of sunken or damaged vessels, cargoes, or properties owned or insured by or on behalf of the Maritime Administration, the United States Shipping Board, the U.S. Shipping Bureau, the United States Maritime Commission, or the War Shipping Administration." *Id.* at § 57110(a). The Department of Transportation has stated that "United States custody and control extends to any shipwreck of a vessel that at the time of its sinking was owned or under charter of MARAD or one of its predecessor agencies." Notice of United States Shipwreck Custody and Control; Protecting Sunken Vessels & Cargo, 88 Fed. Reg. 45452-03, at 45452 (July 17, 2023). It goes on to declare that "United States custody and control also extends by right of subrogation to shipwreck cargoes, as the loss of which was covered and paid for by insurance programs administered by MARAD or by one of its predecessor agencies." *Id.* "Pursuant to its authority, on behalf of the United States, MARAD does not consent to the salvage of such shipwrecks and or their cargoes." *Id.* at 45452-53.

Here, Plaintiff's opposition to the Motion to Intervene focuses on whether the United States can prove ownership of the silver bullion. For purposes of this motion, however, factual issues of actual ownership and abandonment fall secondary to the issue of whether the United States has a sufficient ownership interest to allow it to intervene in this action. It is undisputed that, at the time it sank, the United States owned the J.B., and it was carrying government-owned cargo. Williford Decl. ¶¶ 4, 7. Further, Plaintiff presents no evidence that the United States ever affirmatively abandoned the J.B. or its cargo. In fact, Plaintiff acknowledges that the 1987 Invitation for Bids, the United States indicated that, among the Government-owned cargo was silver bullion of unknown

10

quantity. Def.'s Opp., Ex. B. At best, Plaintiff's remaining exhibits simply reflect, at best, the United States' uncertainty about the presence of silver bullion on the J.B. and not an abandonment of any right to such bullion if it were, in fact, on the J.B. *See* Def.'s Opp., Ex. A (failing to list silver bullion); Def.'s Opp., Ex. C (noting that the Mint was "unable to locate any records concerning silver bullion"); Def.'s Opp., Ex. D (stating that "the presence of any bullion has not been verified. MARAD makes no guarantee or warranty of the existence of the rumored silver bars onboard the vessel"); Def.'s Opp. Ex. E (noting that "MARAD's title to JOHN BARRY and its cargo is not clear" and that, although no one had challenged MARAD's authority to sell the cargo, several steps should be taken before selling the salvage rights to the silver).

The current action focuses entirely on the J.B. wreck, the ownership of the unrecovered cargo, and the salvage rights to those items. Plaintiff seeks a court order granting it sole and exclusive salvage rights to the J.B. and ownership rights to the silver bullion. As noted above, only the Secretary of Transportation can authorize such salvage rights with respect to sunken vessels owned by the United States. For purposes of the Motion to Intervene, it is enough that the United States has set forth a sufficient legal interest based on its ownership of the J.B. and its potential ownership of the silver bullion. The question of whether the United States actually owns the silver bullion that was purportedly on that ship is an issue of fact not appropriate for resolution at this juncture. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) ("[A] 'legally protectable interest' does not mean the interest must be 'legally enforceable.'").

C.  **Threat of Impairment**

Under the second requirement of Rule 24(a)(2), a proposed intervenor must demonstrate that its interest "*might* become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mountain Top Condo.*, 72 F.3d at 368 (emphasis in original) (citation omitted). "[T]he court must consider not only the nature of the relief sought . . . but also the practical

11

consequences of such a ruling." *Am. Farm Bureau Fed'n v. U.S. Envt'l Prot. Agency*, 278 F.R.D. 98, 109 (M.D. Pa. 2011). "It is not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest." *Treesdale, Inc.*, 419 F.3d at 226-27.

Here, the Complaint seeks a court order declaring that Plaintiff is "entitled to the exclusive title, ownership and possession of the silver bullion and that it and its associates shall salvage pursuant to this action and under the protection of this Court." Compl. ¶ 37. A grant of this requested relief would divest the United States of its authority to grant salvage rights to its vessels and would preclude the United States from making any ownership claim to the silver bullion. As such, the relief sought constitutes a "tangible threat" to the United States' legal interest.

### D.    Adequate Protection of Interest

Under the third factor, a proposed intervenor bears the "minimal" burden of showing that representation of its interests may be inadequate. *Trbovick v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). As a general rule, "[a]n applicant's rights are not adequately represented where: (1) the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting the suit." *Alcan Aluminum, Inc.*, 25 F.3d at 1185-86 n.15.

Here, Plaintiff is the sole party to the present suit and its interests stand in direct opposition to those of the United States. Therefore, no party can adequately represent the United States' interest and intervention is appropriate.

## CONCLUSION

In light of the foregoing, the Court finds that the United States has sufficiently demonstrated an interest in the silver bullion that is the subject of this action, a threat to its potential entitlement to the bullion, and the absence of adequate representation of its interests in the lawsuit. Whether

the United States can ultimately establish its legal ownership of that bullion is of no moment in the Court's Rule 24(a)(2) inquiry. Accordingly, the United States will be granted leave to intervene as a matter of right. An appropriate Order follows.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc: Joseph H. Rodriguez, U.S.D.J.